UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RUTH A. EBNER-CUPPLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV1448 RWS |
| | ) |
| JOHN E. POTTER, | ) |
| Postmaster General, United States Postal | ) |
| Service, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Ruth Ebner-Cupples alleges in her amended complaint that she has been subjected to employment discrimination by the United States Postal Service. Her claims span a period of more than twenty-five years. Most of these claims were brought in a previous lawsuit that was dismissed based on Ebner-Cupples' failure to exhaust her administrative claims. Defendant John Potter, Postmaster General, United States Postal Service (the "Postal Service") has moved for summary judgment. I will grant the Postal Service's motion because Ebner-Cupples has failed to establish a genuine issue of fact that creates a reasonable inference that she was the victim of employment discrimination.

### *Background*

Ebner-Cupples began her employment with the Postal Service in 1974. In May 1980 she was appointed to the position of Postmaster in Glen Carbon, Illinois. Sometime later in 1980 Ebner-Cupples resigned her position with the Postal Service. She alleges that she was forced to resign due to ongoing sexual harassment by her superior.

Ebner-Cupples requested to be reinstated with the Postal Service in November 1994. On December 16, 1994, she was informed that there were no career employee openings at that time. She applied again for reinstatement of employment in April 1995. She indicated that she was seeking an EAS-15 position or higher which was the level she had attained as a Postmaster. On July 26, 1995 she was reinstated as a Window Clerk in the O'Fallon, Illinois station. Her reinstatement was at a lower grade and pay scale that she had desired but it was the only available open position. Sometime following her appointment, Ebner-Cupples was reassigned to the Main Post Office facility in St. Louis, Missouri.

In January 1996 she requested a transfer/relocation from her position. On January 12, 1996, the Postal Service informed her that she could not be transferred due to a shortage of mail processors in the automation units. On February 19, 1996, Ebner-Cupples requested that she be placed on "leave without pay" status. On February 27, 1996, Paul Lee, then the Manager of Human Resources, Gateway District, denied Ebner-Cupples' request based on Postal Service policy. On February 29, 1996, Ebner-Cupples claimed that she injured her back at work. Her diagnosis was "back strain." Her request for worker's compensation benefits was later denied based on a finding that her injury was not work related.

On March 14, 1996, Ebner-Cupples requested a leave of absence for ninety days for "personal reasons" in hopes of being assigned to a more "suitable position" or, in the alternative, she tendered her resignation. On March 18, 1996, Paul Lee denied her request for a leave of absence until a better position became available. As a result, on April 4, 1996, the Postal Service accepted Ebner-Cupples' resignation.

On September 13, 1996, Ebner-Cupples filed a complaint with the Equal Employment

-2-

Opportunity Commission alleging that she had been subjected to employment discrimination based on race, color, sex, age, retaliation and disability. The EEOC complaint was dismissed for Ebner-Cupples failure to comply with applicable time limits for filing her complaint.

On August 25, 1997, Ebner-Cupples filed a federal lawsuit in the United States District Court for the Eastern District of Missouri (Cause No. 4:97CV1757 DJS) alleging employment discrimination against the Postal Service. Her complaint in that case covered all of her present claims against the Postal Service arising from 1980 through the date she filed her complaint. On January 5, 1999, United States District Court Judge Donald J. Stohr found that Ebner-Cupples had failed to timely exhaust her administrative remedies and granted the Postal Service's motion to dismiss for lack of subject matter jurisdiction. The United States Court of Appeals for the Eighth Circuit affirmed Judge Stohr's decision on November 5, 1999.

On January 15, 1999, Ebner-Cupples sent a request for reinstatement to the Postal Service. On January 28, 1999, Mary H. Johnson, a Postal Service human resource specialist, wrote to Ebner-Cupples that her request for reinstatement had been received and that her request would remain on file for six months. Ebner-Cupples provided the Postal Service with a letter dated February 12, 1999, from her medical doctor, Michael K. Houser, which stated that Ebner-Cupples "really can't work and I think the patient is totally disabled."

On December 17, 2001, J onda Hill, a human resource specialist for the Postal Service wrote to Ebner-Cupples acknowledging another request for reinstatement. Ms. Hill stated that there were no "career vacancies" available. Ebner-Cupples again requested reinstatement in May 2002. On May 9, 2002, Ms. Hill wrote a response that stated there were no vacancies and because of downsizing at the Postal Service, no employment vacancies were anticipated in the near future.

A few weeks later, on May 21, 2002, that Postal Service sent another letter to Ebner-Cupples informing her that the Postal Service was not accepting applications for the position of Appeals Review Specialist. The letter stated thata "vacancy [for thatp osition] was advertised last year, but thatj ob has since been filled."

On June 18, 2003, Ebner-Cupples sent a letter to Danita Aquinigoc, District Manager, Gateway District, requesting reinstatement. She specifically stated thats he sought a management position with the Postal Service. She also raised the issue of her workers' compensation claim which had been denied eight years earlier. On June 30, 2003, Ms. Aquinigoc sent Ebner-Cupples a letter stating that her request for reinstatement had been forwarded to Joe Orr, Acting Manager, Human Resources to investigate her requesta nd to respond to it.

On July 10, 2003, Ms. Hill, the human resource specialist, wrote Ebner-Cupples and told her there were no employmentv acancies at the currentt ime. The letter also stated that based on the Postal Service's currents ituation of downsizing thatn o employment vacancies were anticipated in the near future.

On July 11, 2003, Mr. Orr wrote a letter to Ebner-Cupples in which he confirmed there were no employmento penings att he Postal Service and that her workers' compensation claim had already been reconsidered and denied numerous times.

On July 18, 2003, Ebner-Cupples wrote to Mr. Orr. stating that she had received his letter of July 11, 2003, but that she was unhappy with his response because his letter "did not address my issues in detail as requested." She requested that Mr. Orr have "another EEO officer under the duress process contactm e for the filing of another complaintw ith the effective date of July 10, 2003,w hen I received notice thata position is not available ...."

-4-

On July 21, 2003, Alice Johnson, Manager Personnel Services, sent a letter to Ebner-Cupples informing her that her application for the Manager of Human Resources (EAS-25) was "not given consideration." The letter stated that Ebner-Cupples did not meet the eligibility requirements which read in partt hat the position was open to all "qualified EAS career Postal employees...with at leasto ne year of current continuous career are eligible to apply."

On August5 , 2003, Ebner-Cupples wrote a letter to the Office of Inspector General of the Postal Service requesting a complaint to be filed against the Postal Service. That letter sought an investigation of Ebner-Cupples' separation from employment with the Postal Service in April 1996 and her failure to be awarded workers' compensation for her back injury in February 1996. Her letter refers to the letters she received from Ms. Hill on July 10, 2003 and from Mr. Orr on July 11, 2003 informing her thatt he Postal Service did not have any employmento penings. She asserts thatt hese letters are the basis for her claim of discrimination for failing to reinstate her employment.

Ebner-Cupples pursued her administrative remedies with the EEO process at the Postal Service. The EEO investigation was limited to Ebner-Cupples' claim that she had been discriminated against when her request for reinstatementwa s denied on July 10 and 11, 2003. The EEO investigation dismissed all of her claims concerning her previous employmentw ith the Postal Service which ended in her resignation in April 1996. These claims were dismissed because they had already been fully addressed in her prior EEO complainta nd dismissed in May 23, 1997, in a Final Agency Decision. It was this prior agency decision that was the subject of the previous lawsuit before Judge Stohr and dismissed by him in January 1999.

According to the Postal Service's memorandum in support of summary judgment, and

-5-

undisputed by Ebner-Cupples, an EEO Administrative Judge issued summary judgment to the Postal Service finding no discrimination towards Ebner-Cupples for the failure to reinstate her in July 2003. The AL determined that there were no employment vacancies at the time Ebner-Cupples sought reinstatement and that, based on ongoing downsizing at the Postal Service, Ebner-Cupples was correctly informed that the Postal Service did not anticipate any vacancies in the near future. The AL also noted that under Postal Service policy, the Postal Service was not under any obligation to preferentially reinstate Ebner-Cupples because more than three years had elapsed since she last worked for the Postal Service. A former employee of the Postal Service may be considered for reinstatement if the employee seeks employment within three years of leaving the Postal Service. Because Ebner-Cupples did not meet this requirement she had to compete for positions with other Postal Service employees as well as with the general public.

Subsequently, Ebner-Cupples completed the exhaustion of her administrative remedies and received a right to sue letter date August 10, 2005. She filed the present lawsuit on September 8, 2005. Her claims are based on discrimination and are predominately based on the claims that were dismissed by Judge Stohr in the previous lawsuit.

Her seven count complaint asserts the following claims:

In Count I she alleges sexual harassment based on events that ended in her termination of employment in 1996. In Count II she asserts a claim of retaliation in assigning her to the job as a machine operator in 1995. I also liberally construe this claim of retaliation to apply to the denial of reinstatement in July 2003. In Count III she asserts a claim of age discrimination which asserts that she was passed over for unspecified positions for which she applied in favor of younger applicants. In Count IV she asserts a claim of gender discrimination which asserts that she was passed over for

-6-

unspecified positions for which she applied in favor of male applicants. In Count V she asserts a claim of racial discrimination in which she asserts that she was passed over for unspecified positions for which she applied in favor of black applicants. In Count VI she asserts a claim of disability discrimination in which she alleges the Postal Service failed to reinstate her employment based on her disability. In Count VII she asserts a qui tam action based on unspecified violations.

### *Legal Standard*

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ...." Fed. R. Civ. P.56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R.Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on

-7-

circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it musts imply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It

---

[1] The same burden shifting analysis is applied to other claims of discrimination. See Rothmeier v. InvestmentAdvisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003) (applying McDonnell Douglas burden-shifting analysis to claims under the ADA and the MHRA).

is not enough to merely discreditde fendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference thata discriminatory motive was a determinative factor in the adverse employmentdec ision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

*Discussion*

Ebner-Cupples' claims fall into two categories. Her claims of discrimination for not being reinstated in July 2003 and her claims concerning her previous employmentw ith the Postal Service.

*Ebner-Cupples' claims concerning her previous employment with the Postal Service*

The Postal Service has moved for summary judgmento n all of Ebner-Cupple's claims concerning her prior employment with the Postal Service. All of these claims were or could have been raised in Ebner-Cuppels' previous lawsuitt hat was dismissed by Judge Stohr on January 5, 1999. The Postal Service asserts that these claims are barred by the doctrine of res judicata or, in the alternative, are barred based on Ebner-Cupples' failure to timely exhausth er administrative remedies as to those claims.

*Res judicata*

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that

-9-

action." Allen v. McCurry, 449 U.S. 90, 94 (1980). There are three requirements that must be met in order to apply res judicata: "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." Banks v. International Union Electronic, Elec., Technical, Salaried and Machine Workers, 390 F.3d 1049, 1052 (8th Cir. 2004).

Judge Stohr's dismissal of Ebner-Cupples' first lawsuit was based on a lack of subject matter jurisdiction because she had failed to timely exhaust her administrative remedies before filing her lawsuit. A decision by a federal court that a statute of limitations or an administrative deadline bars an action is a decision on the merits for purposes of claim preclusion. Kratville v. Runyon, 90 F.3d 195, 198 (7th Cir. 1996)

Because Ebner-Cupples' claims in the present lawsuit, based on her previous employment with the Postal Service, were or could have been brought in her previous lawsuit before Judge Stohr they are barred by res judicata. As a result, I will grant the Postal Service summary judgment on all of Ebner-Cupples' claims that arose before she filed her first federal lawsuit.

*Failure to exhaust*

Judge Stohr's dismissal of Ebner-Cupples' first lawsuit was based on a lack of subject matter jurisdiction because she had failed to timely exhaust her administrative claims. If such a dismissal were not deemed to be an adjudication on the merits[2] the doctrine of res judicata would not apply. As an alternative to res judicata, the Postal Service seeks summary judgment on these claims based on Ebner-Cupples' failure to timely administratively exhaust them.

---

[2] See Federal Rule of Procedure 41(b).

-10-

"Administrative remedies must be exhausted before a federal employee may bring an employment discrimination claim against a federal employer." McAlister v. Secretary of Dept. of Health and Human Services, 900 F.2d 157, 158 (8th Cir.1990)(citing Morgan v. United States Postal Service, 798 F.2d 1162 (8th Cir.1986).[3] Failure to exhaust such remedies is fatal to claims of federal employment discrimination. Id.

Ebner-Cupples asserts her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act( ADEA), 29 U.S.C. §§ 621-634 (Id.), the Rehabilitation Act of 1973, 29 U.S.C.§ 701 et seq., and the Americans with Disabilities Act o f 1990 (ADA), 42 U.S.C. § 12101 et seq.[4]

Prior to filing an employment action against a federal agency in a district court a complainant must comply with certain notice and exhaustion requirements. In order to exhaust her administrative remedies, a complainant must first pursue her allegations by contacting an EEO counselor within 45 days of the unlawful practice.[5] 29 C.F.R. § 1614.105(a)(1). Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.2005).

---

[3] Exhaustion is required for claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ets eq. (Title VII) Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005), the Age Discrimination in EmploymentA ct (ADEA), 29 U.S.C. §§ 621-634 (Id.),a nd the Rehabilitation Acto f 1973, 29 U.S.C. § 701 ets eq. (Gardner v. Morris, 752 F.2d 1271, 1278 (8th Cir. 1985)).

[4] Ebner-Cupple's cannot assert a claim under the ADA because relief under the ADA is not available to federal employees. See 42 U.S.C. § 12111(5)(B)(i). A federal employee or applicant must pursue an employmentd isability claim under the Rehabilitation Act. Lewis v. Johanns, 180 Fed. Appx. 599, 601 (8th Cir. 2006).

[5] A lawsuit under an ADEA claim may also be filed if a complainant should gives a thirty day notice of intent to sue to the EEOC within 180 days of the alleged unlawful practice. See 29 U.S.C. § 633a(d).

-11-

Exhaustion of administrative remedies is not a jurisdictional requirement. Zipes v. TWA, Inc., 455 U.S. 385, 393(1982). It is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. The defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies. Ballard v. Rubin, 284 F.3d 957, 964 n.6 (8th Cir. 2002)(citation and quotations omitted). An equitable tolling remedy should be reserved for circumstances that are truly beyond the control of the plaintiff. Coons, 410 F.3d at 1040. "The pertinent question is whether the employee had knowledge of his right not to be discriminated against or the means of obtaining such knowledge." Id. (internal quotation omitted).

In the previous lawsuit, Judge Stohr did reach the merits of whether Ebner-Cupples timely exhausted her administrative remedies before she filed her first federal lawsuit. He found that she did not. That determination is entitled to deference under the doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, precludes relitigation of identical issues of fact." Wedow v. City of Kansas City, Mo., 442 F.3d 661, 669 (8th Cir. 2006). The Postal Service has not waived the exhaustion requirement and has asserted and proved it as an affirmative defense. As a result, I will grant summary judgment to the Postal Service on all of Ebner-Cupples' claims that were brought or could have been brought in her previous federal lawsuit based on her failure to timely exhaust her administrative remedies. Because she failed to to properly exhaust her administrative remedies her claims are forever barred from judicial review.

Count I of Ebner-Cupples' amended complaint is based solely on sexual harassment claims that were or could have been filed in her first lawsuit. I will grant the Postal Service summary judgment on that count on the grounds of res judicata and on Ebner-Cupples' failure to timely exhaust her administrative remedies. Similarly, based on the same grounds, summary judgment is

-12-

also granted to the Postal Service on any claims in Counts II through VII that were or could have been brought in the previous suit

*Discrimination in July 2003*

The only claims that have been preserved as properly exhausted are Ebner-Cupples' claims thats he was discriminated againstw hen the Postal Service refused to reinstate her on July 10 and 11, 2003. [6]

*Title VII and ADEA claims*

Ebner-Cupples asserts thats he was not reinstated in July 2003 based on her sex, her race and her age. To establish a prima facie case of discrimination in a failure-to-hire context requires a plaintiff to show that (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the defendantwa s seeking applicants; (3) she was rejected; and (4) the defendant filled the position with a person who was not in the protected group. Schiltz v. Burlington Northern R.R., 115 F.3d 1407, 1412 (8th Cir. 1997).

Ebner-Cupples has not presented any evidence to establish the second prong (she applied and was qualified for a job for which the defendant was seeking applicants) or the forth prong (the defendant filled the position with a person who was not in the protected group). In her oppositions to the Postal Service's motion for summary judgment (documentn umbers 123, 131, and 133) Ebner-Cupples does not identify any specific job openings in July 2003 for which she applied. Nor does she identify her qualifications as to any job opening. She has also failed to identify any nonwhites, males, or people under the age of forty years old who applied for and received a job for

---

[6] The sole issue preserved in Ebner-Cupples' EEO charge was her allegation that she was the victim of discrimination when she received letters from Ms. Hill dated July, 10 2003 and from Mr.Orr dated July 11, 2003 stating thatt here were no employmentv acancies.

-13-

which she applied.

Ebner-Cupples has filed many motions and exhibits in this case. In responsive filings to the Postal Service's motion for summary judgment, Ebner-Cupples invites the Court to listen to taped testimony and to review numerous depositions/exhibits and the Court will see that she has been the victim of discrimination. To avoid summary judgment, a plaintiff must do more than submit speculative theories, she must set forth specific facts showing that a genuine issue of material fact exists. Fed.R . Civ.P . 56(e). To the extentt hat specific facts supporting the second and forth prong of Ebner-Cupples' prima facie case are contained somewhere in the voluminous documents thats he has submitted, this information has not been made apparentb y Ebner-Cupples. A Court is not under an obligation to sift through documents in a quest to uncover and speculate on evidence of genuine issues of material fact that would defeat a motion for summary judgment. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir.1996). [7]

As a result, I find that Ebner-Cupples has failed to establish a prima facie case of employment discrimination under Title VII or the ADEA.

Even if she had, the Postal Service has proffered a legitimate, non-discriminatory reason for its failure to hire Ebner-Cupples in July 2003. The Postal Service did not have any career positions available for which Ebner-Cupples would have been eligible. In an affidavit submitted as part of the Postal Services Exhibit G, Joseph Orr, the acting human resources manager in July 2003,s tates thatt he Postal Service had been downsizing and had reduced career employees in the Gateway Districtb y over 1600 employees since 2000. (Aff. B at p. 2). In July 2003 a hiring freeze was in

---

[7] All of Ebner-Cupples' claims suffer from the same lack of specific facts which would create a genuine issue of material fact thatw ould defeata motion for summary judgment.

-14-

place for positions similar to the one held by Ebner-Cupples before her resignation. Id. No employees had been hired in the clerk craft in several years. Id. There were no career positions available on or around July 11, 2003, for which Ebner-Cupples would have been eligible to fill. Id.

Jonda Hill, the human resource specialist who wrote to Ebner-Cupples on July 10, 2003, also submitted an affidavit in which she states that there were no career vacancies at the time Ebner-Cupples applied for reinstatement. (Ex. G, Aff. C.p. 1). Ebner-Cupples has failed to offer specific facts that challenge either Mr. Orr's or Ms. Hill's statements. As a result, Ebner-Cupples has failed to establish any facts that support her claims of discrimination under Title VII and the ADEA.

*Rehabilitation Act claim*

Ebner-Cupples alleges that she was not reinstated in July 2003 because of her disability. A plaintiff must establish a prima facie case by showing that (1) she is disabled within the meaning of the Rehabilitation Act; (2) she is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) she suffered an adverse employment action because of the disability. Heisler v. Metropolitan Council, 339 F.3d 622, 626 (8th Cir. 2003)(analyzing an ADA claim).[8]

An individual with a disability is defined as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a

---

[8] Cases interpreting the ADA and the Rehabilitation Act are interchangeable because the same basic standards and definitions are used under the ADA and the Rehabilitation Act. Ballard v. Rubin, 284 F.3d 957, 960 n.3 (8th Cir. 2002)

-15-

record of such an impairment, o r (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). To determine whether Ebner-Cupples is disabled under this definition, a court looks to the regulations promulgated in conjunction with the Act. Demming v. Housing and RedevelopmentA uthority, of Duluth, Minn., 66 F.3d 950, 54 (8th Cir.1995) . These regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3 (1991).

Ebner-Cupples has not provided specific facts to establish any of the elements of a prima facie case of disability discrimination. In response to the Postal Service's motion for summary judgment, she has failed to presenta ny evidence that she had a qualifying disability at the time she sought reinstatement with the Postal Service in July 2003. The Postal Service, in its motion for summary judgment, i ndicated thats he had suffered "back strain" in 1996 and a letter from her doctor dated February 12, 1999, stated that Ebner-Cupples "really can'tw ork and I think the patient is totally disabled." These facts do not give any indication of the state of Ebner-Cupples' health in July 2003.

Nor has Ebner-Cupples presented specific facts that a job opening exited att he Postal Service in July 2003 for which she was qualified either with or without accommodation.

Even if Ebner-Cupples could establish a prima facie case of disability discrimination, the Postal Service has proffered a legitimate, non-discriminatory reason for its failure to hire Ebner-Cupples in July 2003. The Postal Service did not have any career positions available for which Ebner-Cupples would have been eligible.

In addition, Postal Service employees Ms. Hill and Mr. Orr sentt he letters of July 10 and 11,2003 denying Ebner-Cupples' requestf or reinstatement. Their affidavits cited above state that

-16-

they were unaware of Ebner-Cupples disability status at the time they wrote their letters. Because they were unaware of Ebner-Cupples' disability status, she cannot establish thatt hey were motivated to deny her employment based on her disability status.

To the extentt hate vidence supporting her disability claim might be found somewhere in taped testimony and numerous depositions/exhibits, Ebner-Cupples has failed to setf orth *specific facts* showing that a genuine issue of material facte xists.

Ebner-Cupples has failed to establish a prima facie case of disability discrimination. She has also failed to presenta genuine issue of fact whether the Postal Service's reason for not reinstating her was merely a pretext for disability discrimination. For these reasons I will grant the Postal Service summary judgment on Ebner-Cupples' disability claim.

*Retaliation claim*

Ebner-Cupples claims of retaliation in her amended complaintf ocus solely on events predating her resignation form the Postal Service in 1996. As for the basis of her claims she specifically states that the "conduct of the Defendant was in retaliation for Plaintiff's report of sexual harassmentt o the Postal Inspector's office in 1980 ...." (Am. Compl. p.23 ¶ 69) As I have already found, those claims are untimely and are barred from further consideration. To the extent that Ebner-Cupples alleges retaliation in July 2003 for her previous EEO activity, she has failed to present specific facts that would create an inference of retaliatory discrimination.

To make a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between (1) and (2). Robinson v. Potter,453 F.3d 990, 994 (8th Cir. 2006).

In her responses to the Postal Services Ebner-Cupples has failed to specifically state what

-17-

protected activities thats he engaged in which she claims led to retaliation in the form of being denied reinstatement in July 2003. To the extent thate vidence supporting her retaliation claim mightb e found somewhere in taped testimony and numerous depositions/exhibits, Ebner-Cupples has failed to set forth *specific facts* showing thata genuine issue of material fact exists.

There is no evidence that Postal Service employees Ms. Hill and Mr. Orr were aware of Ebner-Cupples previous EEO activity or her first federal discrimination lawsuit. Her EEO complaintwa s filed in 1996 and her firstl awsuit was dismissed in January 1999. These actions occurred years before Ebner-Cupples was told that the Postal Service had no openings in July 2003. Because Ebner-Cupples has failed to create a genuine issue of fact that her failure to be reinstated was causally connected to her previous protected activity, I will grant the Postal Service summary judgment on this claim.

*Qui tam action*

In Count VI of her amended complaint Ebner-Cupples has asserted a qui tam action. "A qui tam action is one in which a private plaintiff sues on behalf of the government under a statute thatawa rds part of any penalty recovered to the plaintiff and the remainder to the government." Hays v. Hoffman, 325 F.3d 982, 986 n.1 (8th Cir.2003) . The critical factor allowing plaintiffs to sue under the theory of qui tam is the existence of a statute specifically authorizing such suit. CJS Penalties § 10.

Enber-Cupples' amended complaint does not identify any statute under which she is bringing her qui tam action. Her amended complaint states that this claim "represents a national cost of the repeated offenses in every aspect that the United States Postal Service has been found guilty and still allowed to continue." Her amended complaint does not set forth any specific facts

-18-

to support her qui tam action. Nor does she specifically address her qui tam action in her responses to the Postal Service's motion for summary judgment. Her responses do not identify specific statutes nor do they provided specific facts thatw ould support her qui tam action.

As a result, I will grantt he Postal Service's motion for summary judgment on this claim.

*Failure to appear at her deposition*

The Postal Service has filed a motion to have this case dismissed with prejudice for Ebner-Cupples' failure to appear at her own deposition. She also failed to appear at the depositions that had been scheduled for her to take of three Postal Service employees (Pamela Cothrine, Douglas Martin, and Kate Spirk).

The discovery deadline in this case was set on October 13, 2006. The three Postal Service employees' depositions were scheduled by the parties to be held October 10, 2006. The employees and their attorneys appeared att he designated time and place but Ebner-Cupples failed to appear to take their depositions.

Ebner-Cupples' deposition was set to be held on October 12, 2006 by agreement. According to AssistantU nited States Attorney Wesley Wedemeyer's declaration attached to the motion to dismiss, Ebner-Cupples senta n email notice to him on October 10, 2006 stating that she would not appear for her deposition. Mr. Wedemeyer states that Ebner-Cupples indicated to him thats he did not wantt o be deposed and considered such a depsostion to be "harassment." She told Mr. Wedemeyer that she would not be deposed on October 12, 2006 or any other date. She told him she planned to be sick on October 12, 2006.

Ebner-Cupples failed to appear for her own deposition on October 12, 2006. She never filed a motion for a protective order with the Court. Nor did she attempt to otherwise request

-19-

from the Court a clarification concerning her duty to attend her own deposition. The Postal Service moved under Federal Rule of Civil Procedure 37(d) to dismiss her case with prejudice for her failure to appear at her deposition.

Rule 37(d) permits the dismissal of a case where a party fails to appear for her own deposition. See Aziz v. Wrught, 34 F.3d 587, 589 (8th Cir. 1994). No motion to compel is required before dismissal under Rule 37(d). Id.

I find that Ebner-Cupples refusal to be deposed was willful and without excuse. However, rather than dismiss Ebner-Cupples' case for her intentional refusal to be deposed, I have addressed the Postal Service's summary judgment motion which disposes of this case on the merits.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment[ #117] is **GRANTED**.

**IT IS FURTHER ORDERED that** all other pending motions in this case are **DENIED** as moot.

Dated this 16th day of February, 2007.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

-20-